# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SHAWNDELL BRYANT,

    Petitioner,

vs.

DWIGHT NEVEN, et al.,

    Respondents.

Case No. 2:12-cv-00348-RFB-GWF

**ORDER**

    Before the court are the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (#5) and respondents' answer (#22). The court finds that relief is not warranted, and the court denies the petition.

    After a jury trial in state district court, petitioner was convicted of attempted murder with the use of a deadly weapon, discharging a firearm out of a motor vehicle, and discharging a firearm at or into a structure, vehicle, aircraft, or watercraft. Ex. 13 (#13). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 17 (#13).

    Petitioner then filed in state district court a post-conviction petition for a writ of habeas corpus. Ex. 23 (#13). The state district court appointed counsel and held an evidentiary hearing on some of petitioner's claims. Ex. 31 (#13). The state district court denied the petition. Ex. 32 (#13). Petitioner appealed, and the Nevada Supreme Court affirmed. Ex. 34 (#13).

Petitioner then commenced this action. The court found that grounds 2(b) and 3© were not exhausted.[1] Order (#19). Petitioner elected to dismiss those grounds, and the answer to the remaining grounds followed.

Congress has limited the circumstances in which a federal court can grant relief to a petitioner who is in custody pursuant to a judgment of conviction of a state court.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." Harrington v. Richter, 131 S. Ct. 770, 784 (2011).

> Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of this Court, § 2254(d)(1); Williams v. Taylor, 529 U.S. 362, 412 (2000); or that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Richter, 131 S. Ct. at 785. "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Id. (citation omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. (citation omitted).

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

> Under § 2254(d), a habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is

---

[1]The court uses respondents' division of the petition's grounds into separate topics.

possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court.

Richter, 131 S. Ct. at 786.

> As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Id., at 786-87.

The court will take petitioner's claims out of order. The court turns to ground 2(a) first because it provides a summary of the evidence against petitioner. Petitioner argues that the evidence was insufficient to support the verdict for attempted murder with the use of a deadly weapon because the prosecution did not prove express malice. On this issue, the Nevada Supreme Court held:

> First, Bryant contends that insufficient evidence was adduced at trial to support his conviction for attempted murder with the use of a deadly weapon. Bryant specifically claims that the State failed to present evidence of actual or express malice, and he argues that evidence of implied malice alone is insufficient to support a conviction for attempted murder.
>
> "It is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness." Walker v. State, 91 Nev. 724, 726, 542 P.2d 438, 439 (1975). Accordingly, the standard of review for a challenge to the sufficiency of the evidence is "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational [juror] could have found the essential elements of the crime beyond a reasonable doubt.'" McNair v. State, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Circumstantial evidence is enough to support a conviction. Lisle v. State, 113 Nev. 679, 691-92, 941 P.2d 459, 467-68 (1997), holding limited on other grounds by Middleton v. State, 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998).
>
> Murder is the unlawful killing of a person with malice aforethought, NRS 200.010(1), and attempted murder is "[a]n act done with the intent to commit [murder], and tending but failing to accomplish it," NRS 193.330(1). In other words, attempted murder occurs when a person tries but fails to unlawfully kill someone with malice aforethought. While malice may be express or implied, only express malice will support a conviction for attempted murder. Keys v. State, 104 Nev. 736, 740, 766 P.2d 270, 273 (1988). "Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested by external circumstances capable of proof." NRS 200.020(1). In contrast, implied malice may exist "when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart." NRS 200.020(2).
>
> Here, the State presented evidence that Bryant encountered the victim inside a convenience store and began arguing with him. Bryant told a store clerk to turn off the video cameras. When the clerk informed him that she did not have access to the video camera system,

> Bryant left the store and returned to his car. The victim then told one of the store clerks to call 911 because he thought he was going to be shot. As the victim left the store, Bryant pointed a gun at him from inside a car, fired a single shot, and drove away. A hole was subsequently found in the store wall that had not been there before the incident.
>
> We conclude from this evidence that a rational jury could infer that Bryant intended to take the victim's life when he aimed and fired a gun at the victim. See Sharma v. State, 118 Nev. 648, 659, 56 P.3d 868, 874 (2002) (observing that "intent can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime, which are capable of proof at trial"); see also NRS 193.200. The jury's verdict will not be disturbed where, as here, it is supported by substantial evidence. See Bolden v. State, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981).

Ex. 17, at 1-3 (#13). The Nevada Supreme Court identified the correct principles of federal law. This court has reviewed the transcript of the trial, and the Nevada Supreme Court's summary of the evidence is accurate. It could reasonably have concluded from the argument between petitioner and the victim, petitioner's request to turn off the surveillance cameras, and the victim's request to call 911 that sufficient evidence existed for the jury to find the express malice necessary for attempted murder. For these reasons, ground 2(c) is without merit. Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

Ground 3(a) is a claim that petitioner's rights under the Confrontation Clause of the Sixth Amendment were violated by the admission into evidence of the recording of the 911 call. Apparently one of the employees at the convenience store and the victim spoke during the call. The employee testified at trial and was cross-examined. The victim did not testify at the preliminary hearing or at trial; the prosecution could not locate him.

The Sixth Amendment requires that when the state seeks to introduce testimonial statements given out of court, the declarant must be unavailable to testify and a prior opportunity for cross-examination must have existed. Crawford v. Washington, 541 U.S. 36 (2004). The Confrontation Clause does not apply to all hearsay; it is limited to testimonial statements. Davis v. Washington, 547 U.S. 813, 823-26 (2006). Crawford left open the definition of "testimonial," but prior testimony at a preliminary hearing, prior testimony before a grand jury, and statements given to police at interrogations are testimonial. 541 U.S. at 68. Later, the Supreme Court clarified what it meant by testimonial statements given to police:

-4-

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Davis, 547 U.S. at 822. The court will assume for the purposes of this order that the victim was unavailable to testify at trial, but there never was a prior opportunity for petitioner to cross-examine the victim because the victim also did not appear to testify at the preliminary hearing. The key in this case is whether the victim's statements were testimonial.

Petitioner presented this ground on direct appeal. However, as noted above, he did not provide the recording of the 911 call in the record on appeal, and thus the Nevada Supreme Court determined that he did not prove that the statements were testimonial. Ex. 17, at 4 (#13). The convenience store employee called 911 right after petitioner fired the shot. Petitioner drove off, but there was no guarantee that he would not return to shoot at the victim again. The primary purpose of that 911 call was for the police to respond to an emergency. Based upon the circumstances surrounding the 911 call, the Nevada Supreme Court reasonably could have concluded that the statements were not testimonial. Ground 3(a) is without merit. Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

The remaining grounds are claims of ineffective assistance of counsel. A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," Id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the

1  duty to advocate the defendant's cause, and the duty to communicate with the client over the course
2  of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so
3  exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any
4  such set of rules would interfere with the constitutionally protected independence of counsel and
5  restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

6  Review of an attorney's performance must be "highly deferential," and must adopt counsel's
7  perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight."
8  Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that counsel's
9  conduct falls within the wide range of reasonable professional assistance; that is, the defendant must
10 overcome the presumption that, under the circumstances, the challenged action 'might be considered
11 sound trial strategy.'" Id. (citation omitted).

12 A demonstration that counsel fell below an objective standard of reasonableness alone is
13 insufficient to warrant a finding of ineffective assistance. See Strickland, 466 U.S. at 691-92. See
14 also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). The petitioner must also show
15 that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92.
16 There must be a reasonable probability that, but for the attorney's challenged conduct, the result of
17 the proceeding in question would have been different. Id. at 694. "A reasonable probability is a
18 probability sufficient to undermine confidence in the outcome." Id.

> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so . . . . The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

24 Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (citations omitted).

25 In grounds 1© and 3(b), petitioner argues that counsel should have filed a pre-trial motion to
26 exclude the recording of the 911 call from the evidence; petitioner uses different terms in each
27 ground, but the claims are the same. The state district court denied this claim, and the Nevada
28 Supreme Court summarily affirmed the denial. Ex. 34, at 1-2 (#13). At trial, counsel did object to

1  the admission of the recording. The judge overruled the objection, holding that the victim's
2  statements fell under the excited-utterance exception to the hearsay rule. The judge did note that the
3  issue was something that counsel should have raised in a pre-trial motion. Ex. 8, at 17-19 (#13).
4  The Nevada Supreme Court reasonably could have determined that counsel did not provide
5  ineffective assistance. First, counsel did object at trial, the trial court overruled the objection based
6  upon the excited-utterance exception, and petitioner did not show that there was a reasonable
7  probability that the trial court would have ruled differently if counsel had filed a pre-trial motion.
8  Second, petitioner has not shown that there was a reasonable probability that the outcome of the trial
9  would have been different if the recording of the 911 call had not been admitted. This court has
10 reviewed the transcript of the trial, but the recording was not transcribed, and this court does not
11 have a copy of the recording. The evidence besides the 911 call was overwhelming that petitioner
12 was at the store, argued with the victim, and shot at the victim; indeed, the only issue of evidence
13 that petitioner ever has raised is the proof of the express malice necessary to establish attempted
14 murder. The court does not see any way that petitioner could have been prejudiced by the admission
15 of the recording of the 911 call on top of all the other evidence presented at trial. Grounds 1© and
16 3(b) are without merit. Reasonable jurists would not find the court's conclusion to be debatable or
17 wrong, and the court will not issue a certificate of appealability for these grounds.
18         Ground 1(b) is related to grounds 1© and 3(b). In this ground, petitioner argues that
19 appellate counsel provided ineffective assistance because he did not put the recording of the 911 call
20 into the record on appeal. On direct appeal, the Nevada Supreme Court denied his Confrontation-
21 Clause claim because he did not provide the recording in the record on appeal and thus did not
22 prove a violation of the Confrontation Clause. In the state habeas corpus appeal, the Nevada
23 Supreme Court summarily denied the ineffective-assistance claim. Ex. 34, at 1-2 (#13). For the
24 same reasons given in grounds 1© and 3(b), above, the Nevada Supreme Court reasonably could
25 have concluded that petitioner did not prove prejudice for a couple of reasons. First, based on the
26 circumstances surrounding the call, made immediately after the gunshot, it was reasonable to infer
27 that it was not testimonial and thus there could not have been a violation of the Confrontation
28 Clause. Second, the other evidence at trial pointed to petitioner's guilt so much that there was no

reasonable probability of a different result on direct appeal had counsel provided a copy of the recording. Ground 1(b) is without merit. Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

Grounds 1(a) and 1(e) are related to each other. In ground 1(e), petitioner argues that counsel provided ineffective assistance by rushing to trial after the preliminary hearing. In ground 1(a), petitioner argues that counsel should have filed a pre-trial habeas corpus petition that challenged the sufficiency of the evidence presented at the preliminary hearing to bind petitioner over for trial; such a petition would have delayed the trial. These grounds were the focus of an evidentiary hearing in the state habeas corpus proceedings. On cross-examination, the prosecutor reviewed the evidence presented at the preliminary hearing: The recording of the 911 call, the testimony of the two convenience-store employees who witnessed the argument between petitioner and the victim, recordings from surveillance cameras showing the fight, and testimony by Kimico Stevens, who was in the car with petitioner and witnessed petitioner point a gun at the victim and fire. Ex. 31, at 12-15 (#13). Counsel admitted that the chances of prevailing on a pre-trial habeas corpus petition would have been slim even though Stevens' testimony was "fuzzy." Id. at 15. On the other hand, counsel testified to his reasons for going to trial quickly. Although he would have liked to have cross-examined the victim at trial, the victim could not be found for the preliminary hearing. He thought that the victim also might not be found for trial, and then the jury might wonder why the victim did not appear. Additionally, as noted above, Stevens' preliminary-hearing testimony was vague, and counsel was hoping that a quick trial would not give her the chance to clarify her recollection. However, Stevens' testimony at trial was much more clear than her testimony at the preliminary hearing, and counsel was left with cross-examining her about the differences among her statements to police and in court testimonies. Ex. 31, at 5-8 (#13). See also Ex. 8, at 78-85 (#13) (cross-examination of Stevens).

The state district court determined that petitioner did not receive ineffective assistance of counsel, and the Nevada Supreme Court summarily affirmed. Ex. 34, at 1-2 (#13). The Nevada Supreme Court could have determined reasonably that counsel had made sound strategic decisions. His assumption that the jury might be curious why the victim did not testify at trial was reasonable.

In similar situations in which defendants do not testify, as petitioner himself did not testify, juries are instructed, as the jury was in this case, not to draw any inferences from a defendant's decision not to testify. See Ex. 10, Instr. 17 (#13). Counsel saw unfulfilled his hope that Kimico Stevens would be vague in her trial testimony, but that does not mean that his hope, made without the benefit of hindsight, was unreasonable. On the other hand, counsel was reasonable in thinking that a pre-trial petition for a writ of habeas corpus would have little chance of success. There was significant evidence presented at the preliminary hearing of petitioner being the shooter. The Nevada Supreme Court reasonably could have concluded that counsel's decisions should not be second-guessed. Grounds 1(a) and 1(e) are without merit. Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for these grounds.

In ground 1(d), petitioner argues that counsel provided ineffective assistance because he did not use his investigator properly. At the evidentiary hearing in the state habeas corpus proceedings, counsel testified that he did employ an investigator, but he could not remember what the investigator found, and the investigator did not produce a written report. Ex. 31, at 8-9 (#13). The state district court did not grant relief on this ground, and the Nevada Supreme Court summarily affirmed the denial. Ex. 34, at 1-2 (#13).

In his state habeas corpus petition, petitioner alleges that the investigator could have been used on two matters. First, petitioner alleges that the investigator could have interviewed Kimico Stevens to determine whether she was a credible witness after she made conflicting statements. She initially told the police that she was not in the car at the time of the shooting, then she changed her statement when confronted with evidence that she was in the car. Her testimony at the preliminary hearing was vague. Assuming that Stevens would agree to an interview, it would not have revealed anything new. Counsel already knew that Stevens had given conflicting statements, and he attacked her credibility at trial. Counsel cross-examined Stevens about her initial statement, the threat of criminal prosecution before she gave her second statement, and the differences between her preliminary hearing testimony and her trial testimony. Ex. 8, at 78-85 (#13). The Nevada Supreme

1 Court reasonably could have concluded that petitioner had failed to show what else an investigator could have uncovered about Stevens that counsel did not already know.

Second, petitioner alleges that the investigator could have tried to find the victim and, if he succeeded, then counsel could have moved to dismiss the case because of a lack of a victim. This argument assumes that the testimony of the victim was necessary to convict petitioner. The court has outlined above how the Nevada Supreme Court reasonably could have found that the evidence was sufficient to convict petitioner of attempted murder, and none of that evidence was a statement or testimony by the victim. Furthermore, in the state habeas corpus proceedings petitioner did not actually show that the investigator had not tried to find the victim. At the evidentiary hearing, counsel was asked a few questions about his retention of the investigator, but counsel could not recollect what the investigator had found. Ex. 31, at 8-9 (#13). Petitioner did not call the investigator to testify about what he had done in preparation for the trial. Under these circumstances, the Nevada Supreme Court reasonably could have concluded that counsel did not provide ineffective assistance in his use of the investigator. Ground 1(d) is without merit. Reasonable jurists would not find the court's conclusion to be debatable or wrong, and the court will not issue a certificate of appealability for this ground.

IT IS THEREFORE ORDERED that the petition for a writ of habeas corpus (#5) is **DENIED**. The clerk of the court shall enter judgment accordingly and close this case.

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

DATED: May 3, 2018.

RICHARD F. BOULWARE, II
United States District Judge